IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                                  CRIMINAL NO. 2:21-00087

MARK BOLLING

**MEMORANDUM OPINION**

On February 2, 2023, the court held a hearing on defendant's motions seeking a Franks hearing and to suppress evidence recovered from a search of defendant's LG phone. Present at that hearing were defendant, his counsel, Brian D. Yost, and Assistant United States Attorney Nowles H. Heinrich. On February 9, 2023, the court denied defendant's motions. This Memorandum Opinion sets out more fully the reasons for those rulings.

I.  Background

In September 2020, members of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began to investigate defendant Mark Bolling for drug trafficking and violation of federal firearms laws. Officers with an ATF task force received information from a Source of Information that Bolling was a drug dealer. The Source of Information was Brett Yates.

On September 16, 2020, ATF used Yates to make a controlled-purchase of methamphetamine from Bolling. The controlled-buy took place at Bolling's residence and Yates reported seeing a

handgun near Bolling during the buy.  A video recording of the controlled-buy captured Bolling discussing possessing and selling one or more firearms.

Three days later, on September 19, 2020, Bolling was arrested in Fayette County, West Virginia.  A Fayetteville police officer, who was not affiliated with the ATF investigation, conducted a traffic stop and recovered approximately 100 grams of methamphetamine, 30 grams of suspected heroin (later identified as fentanyl), ammunition, and over $7,000.00 from a vehicle (Nissan Kick) Bolling was driving. During the course of Bolling's arrest, a cell phone was also seized from Bolling.  That cell phone was transferred to ATF custody on September 23, 2020.

On September 21, 2020, a warrant authorizing a search of Bolling's residence at 117 Keystone Drive was issued by United States Magistrate Judge Omar J. Aboulhosn.  The search warrant was executed the same day.  Bolling was not present when the warrant was executed as he was still incarcerated on the traffic stop.  During execution of the search warrant, law enforcement discovered that other people were residing in the building located at 117 Keystone Drive.  Agents recovered an AR-style rifle with a silencer, a .380 caliber pistol, and a box of .45

2

caliber ammunition in an apartment where a man named Donald Jordan was living.  Jordan denied ownership of the firearms and told agents executing the search warrant that Bolling and his wife had access to his apartment.  Also recovered during the search was a .45 caliber pistol in the trunk of a Toyota Camry parked outside the building.

On September 30, 2020, ATF Special Agent David Bullard drafted an affidavit for a federal warrant to search Bolling's phone recovered during the traffic stop.  That affidavit is almost an exact replica of the one submitted on September 21, 2020, to obtain a search warrant on 117 Keystone Drive.  In particular, as to the nature of 117 Keystone Drive, Bullard swore:

5.   On [] September 14, 2020, Task Force Officer Weaver ("TFO Weaver") and Task Force Officer Thomas ("TFO Thomas") interviewed a source of information ("SOI") regarding the trafficking of illegal narcotics, such as heroin and meth.  The SOI identified the target as Mark Alan BOLLING living at 117 Keystone Drive in Charleston, WV 25311.  He stated BOLLING had in his possession several firearms.

6.   The SOI advised he has known BOLLING for an extended period of time and is familiar with him. The SOI stated that he has purchased illegal narcotics from BOLLING.  The SOI described the address/structure to be a yellowish in color, two story, 4 unit apartment building.  SOI advised that the driveway to the apartment complex is a horseshoe and there are storage units behind it. The source's description of BOLLING's address has

since been confirmed by surveillance and a
controlled purchase of methamphetamine.

7.     The SOI stated that he has seen several ounces of
       meth and several ounces of heroin inside
       BOLLING's residence, specifically in BOLLING's
       bedroom (top left apartment).  The SOI stated
       that he has witnessed several firearms inside the
       residence and has personally witnessed [] BOLLING
       trading a firearm for narcotics.  The SOI
       believed BOLLING to be a convicted felon because
       BOLLING had stated he had done time in the 80-
       90's for weapon offenses.  SOI also advised that
       he has witnessed individuals bring[] firearms to
       BOLLING and sell them to him.  SOI stated that
       BOLLING has asked if the firearms were stolen and
       the individuals advised they were, and he still
       purchased them from the individuals.

8.     The SOI stated that he knows firearms well and
       believes there are approximately 20 firearms
       inside the apartment complex housed in a safe in
       the building.  SOI has stated that the other
       units are unoccupied but used to house guns and
       illegal narcotics by BOLLING.

9.     The SOI stated that BOLLING was driving a gray
       Nissan (small sedan) which was a rental car.  The
       SOI stated the car was driven by BOLLING and
       other females to Cleveland, Ohio.  While in
       Cleveland, Ohio BOLLING picked up illegal
       narcotics, believed to be Heroin.  The SOI stated
       that methamphetamine was supposedly acquired as
       well.

11.    R.A.C. Black pulled tax information from the
       Kanawha County Assessor's Office for BOLLING and
       found that BOLLING owns [] 117 Keystone Drive and
       land around it, which includes a multi bay
       storage unit.

12.    SA David Bullard requested a mail watch on 117
       Keystone Drive, and he was informed that 117
       Keystone Drive does not receive mail.  SA David

            Bullard has not been able to find any information that individuals other than BOLLING are living in any of the rooms at 117 Keystone Drive.

13.    SA David Bullard listened to a recorded jail call from BOLLING to an unknown female asking her to move his "tools" from his bedroom to the room across the hall.  This is consistent with the information from the SOI that BOLLING is in sole possession of the residence and all of the rooms therein.

15.    After arriving at 117 Keystone Drive, Charleston, WV, 25311, the CI entered through the front door and then made contact with BOLLING. . . .

18.    On September 16, 2020, SA McNees along with SA Knoll reviewed the recordings of the above mentioned controlled purchase.  BOLLING is visible on the recording inside of 117 Keystone Drive. . . .

ECF No. 117-2.  Special Agent Bullard did not update his affidavit to indicate that a search of 117 Keystone Drive had occurred on September 21, 2020, and that, as a result of that search, it was clear that Bolling was not the sole occupant of 117 Keystone Drive.  He also did not inform the magistrate judge that narcotics were not found on the property nor was a safe with twenty guns.

     On September 30, 2020, a warrant authorizing a search of Bolling's phone was issued by United States Magistrate Judge Omar J. Aboulhosn.  Ultimately, that search was not fruitful as

a Digital Forensic Examiner for the Kanawha County Sheriff's Office Laboratory was not able to unlock the phone.

On February 10, 2022, ATF Special Agent Asa Gravley drafted an affidavit for a second federal warrant to search Bolling's phone. Of his reason for seeking a new warrant, Special Agent Gravley stated:

> Pursuant to a previous federal search warrant, on October 1, 2020, the LG phone recovered from BOLLING was submitted to Detective J.A. Payne, a Digital Forensic Examiner for the Kanawha County Sheriff's Office Laboratory (KCSO) for analysis. Detective Payne advised the LG phone was not supported by UFED for unlock/secure start-up bypass at that time. However, on January 24, 2022, Detective Payne advised that as of December 2021, specialized tools, that is, UFED-P Version 7.21, is now available to perform an unlock on the LG phone.

ECF No. 117-3. In all other respects, the affidavit is almost an exact copy of the ones submitted on September 21, 2020, and September 30, 2020. Once again, the affidavit did not indicate that a search of 117 Keystone Drive had occurred on September 21, 2020, and that, as a result of that search, it was clear that Bolling was not the sole occupant of 117 Keystone Drive. It also did not inform the magistrate judge that narcotics were not found on the property nor was a safe with twenty guns.

The application for the search warrant specified that the search was related to a violation of 21 U.S.C. § 841(a)(1),

distribution of methamphetamine and possession with intent to distribute fentanyl.  In his affidavit, Special Agent Gravley stated:

1.   This affidavit is made in support of an application for a warrant authorizing the search of a black, LG cell phone, serial number 007VTBB0081741, IMEI: 356897100768414, seized from Mark Bolling (BOLLING) on September 19, 2020, incident to his arrest after a traffic stop on US Route 19 in the area of Maple Lane, Fayetteville, Fayette County, West Virginia.  The mobile phone is currently located in Charleston, Kanawha County, West Virginia in the custody of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").

18.  On September 19, 2020, Fayette County Sheriff's Office and Fayetteville PD conducted a traffic stop on a Silver Nissan Kick bearing (VA# UKZ7024).  The driver was identified as BOLLING. During a search of the vehicle 109.5 grams of methamphetamine (individually packed in .10 gram packages) and 34 grams of Heroin (individually packaged in .10 grams) were located.  In addition to the illegal narcotic seized, there was $7024.00 cash located in the vehicle believed to [be] from narcotics sales.

19.  A search of BOLLING revealed a black, LG cell phone, serial number 007VTBB0081741, IMEI: 356897100768414 ("LG phone").  A recorded jail call between BOLLING and his wife revealed that BOLLING asked his wife to remotely delete the contents of his cell phone after he had been arrested.

20.  Pursuant to a previous federal search warrant, on October 1, 2020, the LG phone recovered from BOLLING was submitted to Detective J.A. Payne, a Digital Forensic Examiner for the Kanawha County Sheriff's Office Laboratory (KCSO) for analysis.

7

Detective Payne advised the LG phone was not
supported by UFED for unlock/secure start-up
bypass at that time.  However, on January 24,
2022, Detective Payne advised that as of December
2021, specialized tools, that is, UFED-P Version
7.21, is now available to perform an unlock on
the LG phone.

21.  I know based upon my training and experience that
when individuals use "smart phones", such as this
LG phone recovered from BOLLING, in the course of
a drug trafficking enterprise, evidence of their
activities remain on the memory of the phone.
Such evidence includes messages, contact lists,
call logs, photographs of drugs, money, and co-
conspirators, information relative to the
ownership, registration, and usage of the device,
location information in the form of address
searches and mapping information relative to
travel in furtherance of the enterprise as well
as email communications with suppliers and
customers, calendar information, ledgers, and
notes.

ECF No. 117-3.

On February 10, 2022, a second warrant authorizing a search
of Bolling's phone was issued by United States Magistrate Judge
Dwane L. Tinsley.  See ECF No. 117-4.  That search was
successful.

## II.  Analysis

### A.  *Franks* Hearing

Bolling argued that he was entitled to a Franks[1] hearing
because law enforcement made false statements and material

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

omissions from the search warrants for his phone.  In another opinion, the court discussed its reasons for denying Bolling's motion for a <u>Franks</u> hearing in connection with the search of 117 Keystone Drive.[2]  <u>See</u> ECF No. 254.  The court adopts the analysis

---

[2] Of a defendant's burden to demonstrate entitlement to a <u>Franks</u> hearing, the United States Court of Appeals for the Fourth Circuit explained:

"An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." <u>United States v. Allen</u>, 631 F.3d 164, 171 (4th Cir. 2011).  A <u>Franks</u> hearing provides a criminal defendant with a narrow way to attack the validity of an affidavit.  But to obtain the hearing, a defendant must make a "substantial preliminary showing" that (1) law enforcement made "a false statement"; (2) the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." <u>White</u>, 850 F.3d at 673 (quoting <u>Franks</u>, 438 U.S. at 155–56, 98 S. Ct. 2674).  Given the "presumption of validity with respect to the affidavit supporting the search warrant," <u>Franks</u>, 438 U.S. at 171, 98 S. Ct. 2674, a defendant must satisfy this "heavy" burden before a hearing takes place. <u>United States v. Tate</u>, 524 F.3d 449, 454 (4th Cir. 2008).

The first required showing, of falsity, cannot be conclusory and must rest on affidavits or other evidence.  <u>See</u> <u>Franks</u>, 438 U.S. at 171, 98 S. Ct. 2674; <u>United States v. Clenney</u>, 631 F.3d 658, 663 (4th Cir. 2011).  As a result, the defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts.  Rather, there must be evidence showing that the statements at issue are objectively false.

The second showing, requiring intentional falsity

9

and reasoning in that decision and incorporates it herein.  A
couple of additional points bear mentioning.

Bolling is correct that, given the passage of time since
the search warrant on 117 Keystone Drive was executed, it is
even more troubling that Agent Gravley (and Agent Bullard to a

---

or reckless disregard for the truth, is just as
demanding.  An innocent or even negligent mistake
by the officer will not suffice.  Franks, 438
U.S. at 170, 98 S. Ct. 2674; United States v.
Lull, 824 F.3d 109, 115-16 (4th Cir. 2016).  And
here too, the defendant must provide facts—not
mere conclusory allegations—indicating that the
officer subjectively acted with intent to
mislead, or with reckless disregard for whether
the statements would mislead, the magistrate.
See United States v. Colkley, 899 F.2d 297, 301
(4th Cir. 1990).

Finally, the defendant must show materiality—that
is, that the false statements were "necessary to the
finding of probable cause."  Franks, 438 U.S. at 156,
98 S. Ct. 2674; United States v. Wharton, 840 F.3d
163, 168 (4th Cir. 2016).  A district court may not
hold a Franks hearing where, after stripping away the
allegedly false statements, the truthful portions of
the warrant application would still support probable
cause.  This limitation reflects the ultimate purpose
of Franks:  "to prevent the admission of evidence
obtained pursuant to warrants that were issued only
because the issuing magistrate was misled into
believing that there existed probable cause."  United
States v. Friedemann, 210 F.3d 227, 229 (4th Cir.
2000).

United States v. Moody, 931 F.3d 366, 370-71 (4th Cir.
2019).

lesser degree) did not update the affidavit(s) to reflect what actually transpired during the search.[3]  Therefore, Special Agent Gravley's affidavit does contain misrepresentations or, at the least, omit information.  However, the court finds that these were careless errors and not intended to mislead the magistrate judge.

"[C]areless and negligent mistakes in affidavits do not justify suppression."  United States v. Rauda-Constantino, CRIMINAL CASE NUMBER:  1:18-CR-00203-AT-JSA, 2019 WL 7838968, at *10 (N.D. Ga. Aug 6, 2019).  "Merely failing to take sufficient care is not reckless disregard."  Id.  "Mere negligence, or sloppy draftsmanship, is inadequate under Franks."  United States v. Somerlock, 602 F. Supp.3d 791, 821 (D. Md. 2022).  "The inclusion of the false statement must be knowing or intentional, or with reckless disregard for the truth.  As to omissions, the defendant must show the omissions were designed to mislead, or made in reckless disregard of whether they would mislead."  Id. (citation omitted).

---

[3] The motion to suppress the September 30, 2020, warrant was **DENIED** as it did not yield any evidence that Bolling seeks to suppress.

Although the court found that the warrant affidavit contains multiple careless errors, it could not say that these errors establish recklessness or materiality.  There is simply no evidence upon which the court can conclude that Special Agent Gravley's carelessness was designed to mislead the magistrate judge.  Furthermore, the affidavit's misrepresentations and omissions were not material to the finding of probable cause. As discussed further below, even without the information relating to 117 Keystone Drive, the warrant was supported by ample probable cause.

B.  *Motion to Suppress*

Bolling argued that the search warrant was invalid for lack of particularity, overbreadth, lack of probable cause, and staleness.

1. <u>Particularity and Overbreadth</u>

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The Warrant Clause demands clarity in what is to be searched and seized; it also demands restraint in

12

the scope of what is to be searched and seized in accordance with the bounds of the existing probable cause.  See United States v. Manafort, 323 F. Supp. 3d 795, 801 (E.D. Va. 2018).

The requirement of particularity and prohibition on overbreadth are "related but distinct concepts."  Id.  One court has compared them thus:

> The particularity rule and the probable cause rule serve a common purpose:  to protect privacy by prohibiting a general, exploratory rummaging in a persons [sic] belongings.  Although the two rules serve the same ultimate purpose, they achieve the purpose in distinct ways.
>
> The particularity rule requires the magistrate to make sure that the warrant describes things with reasonable precision, since vague language can cause the officer performing the search to seize objects on the mistaken assumption that they fall within the magistrate's authorization. The probable cause rule prevents the magistrate from making a mistaken authorization to search for particular objects in the first instance, no matter how well the objects are described. The two separate rules must both be met since an unnecessary invasion of privacy can occur either when the magistrate has a firm command of the doctrine of probable cause and a poor command of the English language, or vice versa.

United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1990) (citations and quotation marks omitted).  Despite this distinction, courts often analyze challenges based on the two requirements under the general banner of particularity.  See Adam M. Gershowitz, The Post-Riley Search Warrant:  Search

13

<u>Protocols and Particularity in Cell Phone Searches</u>, 69 Vand. L. Rev. 585, 638 (2016) ("A few courts have recognized that particularity and overbreadth are two distinct legal issues. Most cases intermingle the two concepts, however.") (citation and quotation marks omitted).

Warrants must not authorize a search or seizure greater in scope than existing probable cause can sustain; otherwise, they are overbroad.  See <u>Manafort</u>, 323 F. Supp. 3d at 801 (noting that scope must "be limited by the probable cause on which the warrant is based."); <u>United States v. Skinner</u>, No. 3:19CR19, 2021 WL 1725543, at *9 (E.D. Va. Apr. 29, 2021) (noting that "the breadth requirement commands that probable cause exist for the items that are listed [in the warrant].").

As to the scope of an electronic search, if there is probable cause to search a computer for evidence of a crime, that probable cause is usually sufficient to sustain a search of the entire computer.  See <u>United States v. Cobb</u>, 970 F.3d 319, 329 (4th Cir. 2020); <u>United States v. Williams</u>, 592 F.3d 511, 520 (4th Cir. 2010).  A search of a cell phone is analogous to a search of a computer.  See <u>Riley v. California</u>, 573 U.S. 373, 393 (2014); <u>United States v. Bishop</u>, 910 F.3d 335, 337 (7th Cir. 2018).  And a search of a computer is analogous to a search of a

14

large file cabinet.  See Williams, 592 F.3d at 523 ("[W]e
conclude that the sheer amount of information contained on a
computer does not distinguish the authorized search of the
computer from an analogous search of a file cabinet containing a
large number of documents."); United States v. Bishop, 910 F.3d
335, 337 (7th Cir. 2018) ("[A]s with filing cabinets, the
incriminating evidence may be in any file or folder [of a cell
phone].").  Thus, for purposes of the Fourth Amendment, a cell
phone can be conceptualized as an enormous filing cabinet.

    As one district court in this circuit recently noted, our
Court of Appeals has twice rejected the "paradigm" that would
require, in the context of searches of electronic devices,
warrants to describe the "manner" of the search or "constrain it
to items already known to law enforcement."  Skinner, 2021 WL
1725543, at *15 (citing Cobb, 970 F.3d at 328; Williams, 592
F.3d at 521-22).  While "the Fourth Amendment might require more
specificity as to the place to be searched or the items to be
seized in some computer searches," officers are generally not
required to predict the items of evidence that an electronic
search will uncover or predict where on the computer the
evidence will be found.  Cobb, 970 F.3d at 329.

Rather, officers should search electronic devices in a
manner that respects the limits of what is to be seized:  They
should not go looking where the evidence to be seized is
unlikely to be, and innocuous files should be viewed only
"cursorily."  Williams, 592 F.3d at 519; see also Cobb, 970 F.3d
at 328 (holding that specificity in object of search (evidence
of a murder) sufficiently "confined the executing officers'
discretion").

Insisting that warrants carve out portions of computers and
cell phones to be searched (thereby making other portions of the
devices completely off-limits to law enforcement) has surface
appeal but is neither constitutionally required nor practical in
most circumstances.  See Cobb, 970 F.3d at 329 ("Accordingly,
more specificity was not required under the Fourth Amendment,
nor was limiting the scope of the computer search practical or
prudent under the circumstances of this investigation.").  "As
courts have had to recognize, the nature of electronic evidence
requires that filtering occur at the review level.  This means
that a cursory review of innocuous material may sometimes happen

16

in order to establish what information is relevant."  Skinner,
2021 WL 1725543, at *18.

In determining a warrant's permissible level of breadth, a
balance must be struck between "protecting privacy" and
"permitting legitimate investigation."  See Bishop, 910 F.3d at
338.  There is constitutional breathing room between a warrant
that, in retrospect, could have been narrower, and an
unconstitutionally overbroad warrant.  See Cobb, 970 F.3d at
328.

The warrant here authorized a search of the entire contents
of the phone.  In the space for the "premises" to be searched,
the warrant states, "A black, LG cell phone, serial number
007VTBB0081741, IMEI: 35689710068414, currently located in the
Charleston, West Virginia Office of the Bureau of Alcohol,
Tobacco, Firearms, and Explosive."  ECF No. 117-4.  It further
refers to Attachment A which indicates the phone was seized from
Bolling and "seeks authorization to conduct a digital forensic
examination of the contents of the phone."  Id.  But, as
discussed above, a search of the entire phone passes
constitutional muster.

17

In Skinner, Judge Lauck discussed how, under certain circumstances, a search warrant incorporates the underlying affidavit.

> As a general rule, a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." United States v. Hurwitz, 459 F.3d 463, 470-71 (4th Cir. 2006) (quoting Groh v. Ramirez, 540 U.S. 551, 557 (2004)). Particularity may be satisfied where the warrant "cross-references" or "incorporates" the affidavits and other supporting documents. Hurwitz, 459 F.3d at 473 (quoting Groh, 540 U.S. at 557 (2004)). The Fourth Circuit deems it "sufficient either for the warrant to incorporate the supporting document by reference or for the supporting document to be attached to the warrant itself." Id.

Skinner, 2021 WL 1725543, at *8. In Skinner, the court found that the search warrant in that case incorporated by reference the probable cause affidavit. See id. at 10. The language incorporating the affidavit by reference in Skinner is the same language used in the cell phone warrant in this case. The court finds, therefore, that Special Agent Gravley's affidavit is incorporated by reference and "may be fairly considered along with the warrant[] in establishing particularity and probable cause." Id.

Read alongside Gravley's affidavit and application, the warrant adequately identified the items to be searched and

18

seized.  The application for the search warrant specified that the search was related to a violation of 21 U.S.C. § 841(a)(1), distribution of methamphetamine and possession with intent to distribute fentanyl.  Attachment A sought to seize "stored information to include images, text messages, emails, videos, contact lists, call logs, notes, memos, location information, IP addresses, subscriber information, application, software information, map data, calendars, and ledgers."  A warrant may satisfy the particularity requirement where it contains a description of items to be seized "delineated in part by an illustrative list of seizable items."  Manafort, 323 F. Supp. 3d at 802 (quoting United States v. Riley, 906 F.2d 841, 844-45 (2d. Cir. 1990)).  As Skinner noted, these broad "categories must be read in tandem with the section limiting the items to be searched to those relating to the . . . possible criminal violations."  Id. at *11.[4]

The warrant in this case did not lack particularity nor was it overbroad.

---

[4] The court believes the better practice would have been for all relevant information to appear on the face of the warrant and attachments.

2.   <u>Probable Cause</u>

Bolling also argued that the search warrant failed to establish probable cause to search his phone.  The court disagrees.

Courts "review a magistrate judge's decision to issue a search warrant with great deference, asking only whether the judicial officer had a substantial basis for finding probable cause."  <u>United States v. Blakeney</u>, 949 F.3d 851, 859 (4th Cir. 2020) (quotation marks and citation omitted).  "Whether probable cause for a search exists is a practical, common-sense question, asking whether there is a fair probability that contraband or evidence of a crime will be found in a particular place."  <u>Id.</u> (internal citation and quotation marks omitted).  "Probable cause requires only 'the kind of fair probability on which reasonable and prudent people, not legal technicians,' would rely."  <u>United States v. Jones</u>, 952 F.3d 153, 158 (4th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 1080 (2021) (quoting <u>Florida v. Harris</u>, 568 U.S. 237, 244 (2013)).

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  <u>Brown v. Lott</u>, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (quoting <u>Illinois v. Gates</u>, 462 U.S.

20

213, 243 n.13 (1983)).  In other words, the suspect must only engage in conduct that warrants suspicion.  See United States v. Orozco, 41 F.4th 403, 407 (4th Cir. 2022) (quoting United States v. Gondres-Medrano, 3 F.4th 708, 713 n.1 (4th Cir. 2021)). Probable cause is "not a high bar."  Blakeney, 949 F.3d at 859.

Contrary to Bolling's assertion, Special Agent Gravley's affidavit alleged sufficient facts to establish probable cause to believe that evidence of a crime would be found on Bolling's cell phone.  First, he stated that the phone was seized incident to Bolling's arrest after he was found to be driving a car containing a large quantity of drugs, ammunition, and over $7,000.00 in cash.  Second, Agent Gravley relayed that Bolling was recorded on a jail call telling his wife to delete the contents of his cell phone.  Third, the affidavit recounted that Bolling had sold drugs to a confidential informant several days before his arrest during a controlled buy.  Finally, Gravley stated that, based upon his training and experience, "individuals use 'smart phones', such as th[e] LG phone recovered from Bolling, in the course of a drug trafficking enterprise, [and that] evidence of their activities remain[s] on the memory of the phone."  He further detailed this type of evidence would include "messages, contact lists, call logs,

photographs of drugs, money, and co-conspirators, information
relative to the ownership, registration, and usage of the
device, location information in the form of address searches and
mapping information relative to travel in furtherance of the
enterprise as well as email communication with suppliers and
customers, calendar information, ledgers, and notes."  ECF No.
117-3.

> [C]ourts can rely on an affiant's training and
> experience in making a probable-cause determination,
> and here, the special agent submitting the affidavit
> stated that based on his experience, there is a
> connection between drug dealing and cell phones.  See
> Ornelas v. United States, 517 U.S. 690, 700, 116 S.
> Ct. 1657, 134 L. Ed. 2d 911 (1996).  Specifically,
> courts have acknowledged that a cell phone is "a
> recognized tool of the trade in drug dealing," United
> States v. Slater, 971 F.2d 626, 637 (10th Cir. 1992),
> and that an affiant's knowledge, training, and
> experience of drug dealers' use of cell phones in the
> trade can support a finding of probable cause, see
> United States v. Gibbs, 547 F. App'x 174, 179 (4th
> Cir. 2013) (holding that a search warrant authorizing
> GPS monitoring of a cell phone was supported by
> probable cause where the affidavit recounted the
> user's "extensive drug dealing activities"); United
> States v. Harris, No. 15-0170, 2016 U.S. Dist. LEXIS
> 48445, 2016 WL 1441382, at *11-12 (E.D. Va. Apr. 11,
> 2016) (stating that courts have found probable cause
> "to search a cell phone" where it was "discovered in
> proximity to crime or contraband" because it will
> "almost invariably contain incriminating evidence").

United States v. Juarez-Sanchez, Criminal No. RDB-21-0174, 2022
WL 1226992, at *4-5 (D. Md. Apr. 26, 2022) (quoting United

States v. Worthy, No. TDC-18-0062, 2019 WL 1441172 at *2 (D. Md. Apr. 1, 2019)).

Considered in its totality, Gravley's affidavit provided probable cause to believe that evidence of drug trafficking would be found on Bolling's phone.

3.   Staleness

Bolling argues that the extended seizure of his phone was unreasonable.  He also argues that Gravley's affidavit in support of the February 2022, search warrant does not provide probable cause for the search because it was based on information that was over a year old.

> Evidence received from a warrant that relies on stale information is not admissible in a trial to establish a defendant's guilt.  United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984).  "A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."  Id. at 1335-36 (quotation omitted).  According to the Fourth Circuit, staleness arises in two contexts.  Id. at 1336.  "First, the facts alleged in the warrant may have been sufficient to establish probable cause when the warrant was issued, but the government's delay in executing the warrant possibly tainted the search."  Id.  Second, and relevant here, "the warrant itself may be suspect because the information on which it rested was arguably too old to furnish present probable cause."  Id. (quotation omitted).  To determine whether probable cause was ever present, the court cannot simply "count[] the number of days between the occurrence of the facts supplied and the issuance of the affidavit."  United States v. Richardson, 607 F.3d 357, 370 (4th Cir.

2010) (quoting <u>McCall</u>, 740 F.2d at 1336).  Rather, the
court "must look to all the facts and circumstances of
the case, including the nature of the unlawful
activity alleged, the length of the activity, and the
nature of the property to be seized." <u>McCall</u>, 740
F.2d at 1336.

* * *

The Fourth Circuit has recognized that
"[f]indings of staleness become less appropriate when
the instrumentalities of the alleged illegality tend
to be retained." <u>United States v. Crowffey</u>, 183 Fed.
Appx. 249, 250 (4th Cir. 2006) (unpublished); <u>United
States v. Farmer</u>, 370 F.3d 435, 439-40 (4th Cir. 2004)
(holding that evidence was not stale even though
events supporting probable cause took place nine
months before search warrant was issued).  Evidence
not likely to become stale includes records of
payment, bank statements, canceled checks, receipts,
phone records, and electronic devices.  <u>See</u> <u>Farmer</u>,
370 F.3d at 439-440; <u>United States v. Willis</u>, No. 13-
CR-6013-FPG, 2015 WL 1915123, at *3 (W.D.N.Y. Apr. 27,
2015).

<u>United States v. White</u>, 1:17-cr-94-1, 2017 WL 2633521, at *3-4

(M.D.N.C. June 19, 2017).

The Fourth Circuit, in addressing the "constitutional

question . . . whether an extended seizure of [a defendant's]

phone was reasonable," explained that "[a] seizure that is

'lawful at its inception can nevertheless violate the Fourth

Amendment because its manner of execution unreasonably infringes

possessory interests.'" <u>United States v. Pratt</u>, 915 F.3d 266,

271 (4th Cir. 2019) (quoting <u>United States v. Jacobsen</u>, 466 U.S.

109, 124 (1984)).  "To determine if an extended seizure violates

24

the Fourth Amendment, [the court] balance[s] the government's

interest in the seizure against the individual's possessory

interest in the object seized." Id.

> On the private-interests side, relevant
> considerations include the significance of the
> interference with the person's possessory interest,
> the duration of the delay, whether the person
> consented to the seizure, and the nature of the seized
> property. On the government-interests side, relevant
> considerations include the government's legitimate
> interest in holding the property as evidence, the
> nature and complexity of the investigation, the
> quality of the warrant application and the amount of
> time we expect the application would take to prepare,
> and any other evidence proving or disproving law
> enforcement's diligence in obtaining the warrant.

United States v. Bragg, 44 F.4th 1067, 1072 (8th Cir. 2022

(quoting United States v. Mays, 993 F.3d 607, 617 (8th Cir.

2021)).

In affirming the district court's denial of a motion to

suppress, the Bragg court found that a twenty-four day delay in

seeking a warrant to search defendant's phone was not

unreasonable. See id. at 1073. According to the court:

> [B]ecause smartphones "retain data for long
> periods of time," delay between the time a cell phone
> is seized and when it is searched is not likely to
> cause stored personal data to be lost, or data of
> potential evidentiary relevance to become stale. More
> important to the private interests at stake, Bragg was
> in police custody for the entire twenty-four day
> period, and there is no evidence that Bragg or anyone
> acting on his behalf made a request or demand for its
> return, or even inquired about it. See United States

v. Clutter, 674 F.3d 980, 984-85 (8th Cir.) (temporary
seizure of a jailed defendant's computers "did not
meaningfully interfere with his possessory
interests"), cert. denied, 568 U.S. 882, 133 S. Ct.
272, 184 L. Ed.2d 148 (2012); Stabile, 633 F.3d at
235-36 (no return requested until eighteen months
after seizure).  As the Supreme Court observed in
United States v. Johns, defendants who "never sought
return of the property . . . have not alleged, much
less proved, that the delay in the search . . .
adversely affected legitimate interests protected by
the Fourth Amendment."  469 U.S. 478, 487, 105 S. Ct.
881, 83 L. Ed.2d 890 (1985).

Id. at 1072-73.

Considering the facts and circumstances of this case, the
court cannot find that the delay in seeking warrants to search
Bolling's phone was unreasonable.  First, the record reflects
that ATF sought the first search warrant on September 30, 2020,
eleven days after the phone was seized.  Bolling was
incarcerated that entire time and there is no evidence that he,
or anyone on his behalf, sought the return of the phone.  As
noted in Special Agent Gravley's affidavit, the Kanawha County
Sheriff's Department did not possess the tools at that time to
unlock Bolling's phone.  On January 24, 2022, ATF was informed
that the Kanawha County Sheriff's Department had acquired the
tools to unlock Bolling's phone.  ATF sought the second warrant
approximately 10 days later.  Bolling has remained in continuous
custody since his arrest on September 19, 2020.  Therefore,

"[h]e was not so much as inconvenienced by [his phone's] seizure
. . . [because] his possessory interest in the phone was
severely diminished."  United States v. Dorsey, Criminal No.
RDB-18-0347, 2019 WL 3804113, at *5 (D. Md. Aug. 13,
2019)("[I]ndividuals who are incarcerated have significantly
diminished possessory interests in their personal effects. . . .
[T]he Government is not required to obtain a search warrant as
expeditiously as possible when handling the personal effects of
prisoners who have been totally deprived of their access to
personal property."); see also United States v. Horsley, Case
No. 6:19-cr-00013, 2022 WL 827254, at *1-2 (W.D. Va. Mar. 18,
2022) ("There is no dispute that Horsley has not been entitled
to any possession of the phones since he has been in custody. .
. .  That fact further significantly diminishes any possessory
interest Horsley may have had in the phones."); United States v.
Green, 1:18-CR-121 RJA(MJR), 2021 WL 1877236, at *6 (W.D.N.Y.
Feb. 3, 2021) ("Even more significantly here, Green has been
detained pending trial since his arrest on March 30, 2018.  His
continued inability to possess or use the cell phones while
incarcerated significantly diminishes the importance of their

27

prompt return."). Law enforcement did not unreasonably delay seeking a warrant on Bolling's phone.[5]

Nor was the information provided in Special Agent Gravley's affidavit stale such that it undermined the magistrate judge's finding of probable cause. "[F]indings of staleness become less appropriate when the instrumentalities of the alleged illegality tend to be retained." White, 2017 WL 2633521, at *4 (internal citation and quotation omitted). As the Bragg court noted "because smartphones retain data for long periods of time, delay between the time a cell phone is seized and when it is searched is not likely to cause . . . data of potential evidentiary relevance to become stale." Bragg, 44 F.4th at 1072 (internal quotation marks omitted); see also United States v. Lawson, NO. 3:21-cr-00006-TCB-RGV, 2022 WL 1134721, at *19 (N.D. Ga. Feb. 2, 2022) (denying motion to suppress search of cell phone on staleness grounds because "the ongoing nature of the alleged fraud, facilitated through electronic communications, together with the nature of the property being searched, overcomes any alleged staleness in the information in the affidavit")

---

[5] Prior to the filing of his motion to suppress, there is no indication that Bolling sought the return of his phone. This is further evidence of his diminished possessory interest in his phone. See Horsley, 2022 WL 827254, at 1-2.

(internal quotation omitted).  Given that the warrant in this case sought to seize evidence of narcotics trafficking from a cellphone that had been in law enforcement custody since his arrest, Bolling's staleness argument is without merit.

    4.  <u>The Good Faith Exception</u>

Even if the warrant for the search of Bolling's phone was somehow deficient, <u>Leon</u>'s good-faith exception to the exclusionary rule would apply and suppression is not warranted. "Evidence obtained in violation of the Fourth Amendment . . . is generally subject to suppression under the exclusionary rule." <u>United States v. Perez,</u> 393 F.3d 457, 460 (4th Cir. 2004).  The exclusionary rule breathes life into the Fourth Amendment's guarantees by deterring "future Fourth Amendment violations," not by providing a personal right of exclusion to redress a Fourth Amendment injury.  <u>Davis v. United States</u>, 564 U.S. 229, 236 (2011).  Because deterrence is the "sole purpose" of the exclusionary rule, the Supreme Court has limited its "operation to situations in which this purpose is 'thought most efficaciously served.'"  <u>Id.</u> at 237 (quoting <u>United States v. Calandra</u>, 414 U.S. 338, 348 (1974)).  "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and

sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 144 (2009).

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court established an exception to the exclusionary rule. This exception was to address cases where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id. at 920. The Court explained,

> In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

Id. at 920-21. And deterring magistrates "is not the office of the exclusionary rule." Davis, 564 U.S. at 239.

"When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." Leon, 468 U.S. at 924. "As a general rule, when a neutral magistrate has issued a warrant, the issuance 'suffices to establish' that a law enforcement officer has 'acted in good

faith in conducting the search.'"  United States v. Skinner, No.
3:19CR19, 2021 WL 1725543, at *20 (quoting Leon, 468 U.S. at
922).

There are four circumstances, however, where the good faith
exception does not apply:

> • First, where the magistrate or judge in issuing a
> warrant was misled by information in an affidavit that
> the affiant knew was false or would have known was
> false except for his reckless disregard of the truth;
>
> • Second, where the magistrate acted as a rubber stamp
> for the officers and so wholly abandoned his detached
> and neutral judicial role;
>
> • Third, where a supporting affidavit is so lacking in
> indicia of probable cause as to render official belief
> in its existence entirely unreasonable; and
>
> • Fourth, where a warrant is so facially deficient-
> i.e., in failing to particularize the place to be
> searched or the things to be seized-that the executing
> officers cannot reasonably presume it to be valid.

See United States v. Williams, 548 F.3d 311, 317-18 (4th Cir.
2008) (internal quotation marks, alterations, and citations
omitted).  In these four circumstances, reliance on the warrant
is unreasonable.  See id. at 317.

Unlike determining whether there was a substantial basis
for the probable cause determination (whether the warrant was
valid), in the good faith analysis, our Court of Appeals has
"consistently rejected the notion that reviewing courts may not

look outside the four corners of a deficient affidavit when determining, in light of all the circumstances, whether an officer's reliance on the issuing warrant was objectively reasonable." United States v. McKenzie-Gude, 671 F.3d 452, 459 (4th Cir. 2011).  What is still forbidden, however, is an inquiry "into the subjective beliefs of law enforcement officers."  Id. at 460 (emphasis in original).  In other words, courts may consider actual "uncontroverted facts known to the officer," but may not engage in "fruitless inquiries into the minds of police officers to ascertain motive."  See id. (citation and quotation marks omitted).

All that the government must show is that law enforcement's reliance on the warrant here was not entirely unreasonable. "This is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place."  United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002).  Reliance here was not entirely unreasonable and law enforcement acted in good faith in relying on the warrant.

The evidence here did not show that Special Agent Gravley was dishonest or reckless in his preparation of the affidavit to support probable cause.  As explained above, there is no reason

to believe he misled Magistrate Judge Tinsley as to the search warrant, thus negating the exception to the good faith rule established in <u>Leon</u>.  Furthermore, as discussed herein, his supporting affidavit sets forth ample basis for the probable cause finding, and the places to be searched and items to be seized were limited to those places and things reasonably connected to defendant's suspected drug trafficking.  Nor can the court conclude that Magistrate Judge Tinsley wholly abandoned his role as a neutral and detached magistrate.  Accordingly, <u>Leon</u> would apply even if the warrant at issue were invalid.

### III. Conclusion

Based on the foregoing, defendant's motion for a <u>Franks</u> hearing and to suppress evidence recovered during the search Bolling's phone were denied.

The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record and to the Probation Office of this court.

IT IS SO ORDERED this 30th day of August, 2023.

ENTER:

David A. Faber
Senior United States District Judge

33